The breach assigned is that the sheriff did not levy on property sufficient to satisfy the plaintiff's execution, he having it fully in his power to do so. The levy was made in January; the sale took place the December following, by another officer, under a venditioniexponas, the sheriff Carter having gone out of office in May. The sheriff insists that the property levied on was of sufficient (335) value at the time of the levy, but, from decline in price and other causes not within his control, when sold in December the proceeds were insufficient to satisfy the plaintiff's execution. The plaintiff relies upon the proceeds of the sale as the evidence of the value, and also insists upon the specie price as the sole standard. The judge informed the jury "that it was the duty of the sheriff to levy on personal property before he levied on real property, and left it to them to ascertain from the evidence, if the sheriff had levied on the goods in the store, whether the whole debts of the plaintiff in the execution would not have been satisfied, and instructs them to ascertain from the whole evidence whether the property levied on was sufficient on 15 January, 1819, at the time of the levy, to satisfy the executions levied, and that *Page 184 
it was the right of the plaintiff to demand specie, and it was no fraud in the plaintiff's agent to demand specie, nor could the sheriff complain of it, as every plaintiff had a right to demand it in payment of his execution, and in this case the sheriff must have known the plaintiffs were northern merchants and were not bound to receive bank notes, even if he had sold for them." The above is a quotation from the judge's charge, taken from the transcript. I have taken down the words, for I am not certain that I understand in what manner it was intended to, or did, bear upon the case. The first position is certainly correct as applying to a defendant in an execution; he and he only can complain. So far as it affected the parties in this action, it was irrelevant, nor do I see wherefore it was introduced, unless it was to throw on the defendant the responsibility of a loss upon a deferred sale, no matter from what cause the loss arose if the property levied on was not quite of sufficient value to satisfy the execution; and if it stood alone, I would understand it without that qualification, but taken in connection with the real object of their inquiry as pointed out by the (336) charge, it is but a fair construction to add that qualification to it; but, even so explained, it has an improper influence on the case, for instead of making the difference in the value of the property (levied on) at the time of such levy and the amount of the execution the measure of the damages (this act being considered by the judge as wrongful), he subjected the sheriff to bear the whole loss arising from the deferred sale, and thus the difference between the actual proceeds of such sale and the amount then due on the execution became the measure of the damages. This is the most harmless way in which I can understand it. I am also at a loss how to apply to the case the remark as to the right of creditors requiring payments in specie. It points at two parts of the case. From the evidence it is quite clear that it was a question on the trial who caused the delay in the sale. The defendant contended that the plaintiff did, and introduced the circumstances which took place on the day appointed for the sale on the execution returnable to August, after Carter was out of office. Among other things the defendant proved that the plaintiff's agent, after being pressed by Jones, the defendant in the execution more than once for delay, observed that he could not consent to it, but as he should demand specie he imagined there would be no sale, and insisted that this was evidence from which the jury might infer that the sale was deferred by the act and connivance of the plaintiff's agent, and that he, the sheriff, ought not to be responsible for any loss occasioned by such delay. Now, if the judge pointed that part of his charge to this circumstance, or, rather, if the jury so understood it, it was an error; for however lawful it might be for the plaintiff to demand specie, it was relevant for the *Page 185 
jury to infer from this act that the plaintiff consented to and connived at a delay. Whether it proved it or not is not for me to say; it was for the jury. But the plaintiff might cause a delay by a lawful as well as by an unlawful act, which the defendant did not controvert at all. All that he required was that the consequences of the plaintiff's (337) act (and whether it was the plaintiff's act the jury were to judge) should not be thrown upon him. If, therefore, the judge is understood as informing the jury that, as the act was lawful, the consequences of it ought not to be borne by the person who did it, he erred; for one of the best criterions to ascertain whether an act is lawful or unlawful is whether the actor bears himself all the consequences or if they fall upon another; if on the actor alone, it is almost — I believe I may always say always — invariably lawful; if on others, and they are injured, it is most usually unlawful. These two points go to the standard by which the damages should be measured. But this specie payment may point to a more important question. It seems that in ascertaining the value of the property levied on, the plaintiff contended that the specie value was the true criterion; and if the judge meant by that what the property would sell for in specie, after a reasonable notice of the terms, I am not prepared to say that he was wrong. I am fully confident that he would not be wrong if he means a sale for current bank notes, with such a discount on them as would reduce them to their specie value. But if he means such a sum as the property would sell for in actual specie, without giving notice a reasonable time beforehand that such would be the terms of sale, I am fully confident he is wrong; for such rule would place sheriffs entirely at the mercy of the plaintiffs, and they, to save themselves from ruin from fines and forfeitures and civil liabilities, would in every case levy on treble the value of the property or more, and in cases where it was not intended to demand specie, when the sheriff might be easily placed on his guard by only requiring that before he shall be subject to those fines, penalties, forfeitures, and liabilities for breach of duty, the law should require what is consonant with practice and convenience, viz., that (338) notice should be given.
I do not intend to say that bank notes are money, or a tender in payment of debts, but by consent. Nor do I say that a payment in bank notes may be refused without any previous notice to that effect. All that I intend to say is this, that when a sheriff or other officer is charged with a breach of duty in office, his considering the current bank notes of the country as money, and acting upon that basis without notice to the contrary by those concerned, is not a breach of duty. But I do not mean to say that if the sheriff sells for bank notes without notice to sell for specie, that the creditor is bound to take such notes, or *Page 186 
that the sheriff is not liable to be sued for the money; but it cannot be considered as a malfeasance in office, or subject him to any fine or penalty, or any action where the grievance is breach of official duty.
I think that, as it is pretty apparent that the jury was misdirected by the judge, there should be a
PER CURIAM. New trial.
Cited: Atkin v. Mooney, 61 N.C. 33; Purvis v. Jackson, 69 N.C. 480.